UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

In re:

Milton Tyrone Bush and
Malissia Katernia Bush,　　　　　　Case No. 22-40068-JJR13

　　　　　Debtors.

## MEMORANDUM OPINION AND ORDER

This chapter 13 case has been pending for over two years, and is paying all claims, including unsecured claims, in full. Two related creditors moved the court to lift the automatic stay to allow them to pursue various claims against the Debtors in a state court lawsuit. For the reasons that follow, the court declines to do so.

**Background**

The Debtors filed for bankruptcy relief under chapter 13 of the U. S. Bankruptcy Code[1] on January 26, 2022. The Debtors' petition listed their residence as 102 Kennedy Street, Pell City, Alabama (the "Property"). Schedule A/B stated they, along with others, owned an interest in a single-family home located on the Property, and described their interest as "heir property."

Billy Ray Bush and Joanna Bush Britt (the "Movants"), were not scheduled as creditors and were not on the original mailing matrix filed by the Debtors with their petition. Thus, the Movants were likely not aware of the Debtors' pending bankruptcy case when, on February 15, 2022, they filed a lawsuit (the "Lawsuit") against the Debtors and other defendants in state circuit

---

[1] 11 U.S.C. § 101, et seq. (the "Code"). The Debtors, Movants, and Trustee stipulated to most of the facts recited herein (Doc. 83) and most, if not all, are also reflected in the various pleadings and documents on the court's docket.

court (the "State Court") asserting claims for fraud, trespass, ejectment, and conversion, and seeking a declaration that the Debtors did not have any interest in the Property. Alternatively, the Movants asked for a sale of the Property and a division of the proceeds among the Property's owners according to their interest therein. Additionally, the complaint claimed damages for personal injuries suffered by Billy Ray Bush, one of the Movants, when he was allegedly assaulted by Debtor Milton Bush. After the State Court was made aware of the Debtors' bankruptcy, it stayed the Lawsuit.

In late March 2022, the Movants filed their proof of claim in the Debtors' bankruptcy case for $30,600 and the court added the Movants to the mailing matrix to receive notices. (Claim 14 filed March 31, 2022.) As discussed below, the Movants seek stay relief to "liquidate" their claims in State Court, and in the brief supporting their position, they described their claim as one for "unpaid rent" and assert that payment on their claim under the Debtors' plan is tantamount to an admission that the Movants are in fact the owners of the Property and the Debtors are merely occupants. (Doc. 85, p. 3.) The court does not agree that the claim, on its face, indicates it is a claim for unpaid rent. To the contrary, the Movants stated in part 8 of their proof of claim that the basis for their claim was damages for "Trespass Conversion, Fraud of Real Estate, Possession of Heir Property, [and] Assault of Billy Ray Bush."

The Debtors' amended chapter 13 plan (Doc. 28 filed March 23, 2022) proposed to pay 100% of allowed claims and was confirmed without objection on April 8, 2022. (conf. order Doc. 36.) The confirmation order has long been final and unappealable. In the months following confirmation, the Movants received $7,029.39[2] from periodic disbursements made by the Trustee

---

[2] In her brief opposing the Movants' motion for stay relief, the Trustee stated she is holding an additional $2,894.40 that is due to be disbursed to the Movants. (Doc. 84, p. 2.)

from the biweekly payments by the Debtors under their plan, and disbursements should continue assuming additional plan payments are made as proposed.³ Although the Movants filed their proof of claim before confirmation, the Debtors objected to that claim over a year later, on July 21, 2023, seeking to disallow the claim entirely; however, as mentioned below, the objection was withdrawn.

**The Pleadings**

On October 30, 2023, the Movants filed a motion (the "Motion" Doc. 64) requesting that the automatic stay of Code § 362(a) be terminated to allow them to pursue and liquidate their claims in the State Court Lawsuit.⁴ The Debtors (Doc. 77) and Trustee (at the hearing) opposed the Motion. The Debtors stated at the hearing on this matter and in their brief (Doc. 87, p. 5) that they will be unable to maintain their chapter 13 plan payments if required to retain and pay counsel to defend the Lawsuit in State Court.⁵ Importantly, after the hearing on the claim objection and

---

³ It's worth noting that the Movants were added to the matrix to receive notices when they filed their proof of claim on March 31, 2022, which was after the amended plan was filed on March 23, 2022, but before the confirmation order was entered on April 8, 2022. Inasmuch as these documents were filed within a few days of each other, a credible argument could have been made supporting a motion to reconsider the order confirming the plan, but the credibility of that position was lost after the lapse of over a year and the Movants' acquiescence and acceptance of plan payment during that timeframe.

⁴ It is significant that the Lawsuit was commenced after the Debtors filed their bankruptcy petition. The State Court Lawsuit was and remains a nullity as to the Debtors. "Actions taken in violation of the automatic stay are void and without effect." *Borg-Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir. 1982). The Movants acknowledged in their brief filed in support of their Motion that the Lawsuit was "void and without effect" because it was filed in violation of the automatic stay. (Doc. 85, ¶ 14.) Nonetheless, the Movants offer that if their Motion is granted and they were to prevail in the Lawsuit (presumably by this court modifying the stay retroactively and thereby reinstating the otherwise void Lawsuit), they would not seek to collect or enforce any State Court judgment or order but would return to this bankruptcy court for their claim to administered in the Debtors' chapter 13 case.

⁵ The Debtors' budget shown in Schedules I and J confirm that they do not have the wherewithal to pay an attorney to defend the Lawsuit and continue to pay their chapter 13 plan payments. If payments are not paid, the case will be dismissed and the Debtors' creditors, including the Movants, will receive no further payments in the case.

3

Motion, the Debtors withdrew their objection to the claim, leaving only the Motion and the Debtors' and the Trustee's objections thereto (Doc. 77) for resolution.

**Jurisdiction and Authority to Enter Final Orders**

The Motion itself is a core proceeding under 28 U.S.C. § 157(b)(2)(G): "Core proceedings include . . . (G) motions to terminate . . . the automatic stay . . . ." Movants take issue, however, with this court's authority to rule on the personal injury aspect of their claim. In making certain exclusions to core jurisdiction, § 157(b)(2)(B) and (b)(2)(O) further provide: "Core proceedings include . . . (B) allowance or disallowance of claims against the estate . . . but not the *liquidation or estimation* of *contingent* or *unliquidated personal injury tort* or wrongful death claims against the estate for purposes of distribution in a case . . . .. . . [and] (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor . . . . relationship *except personal injury tort* or wrongful death claims." (emphasis added). And § 157(b)(5) instructs, "The district court shall order that *personal injury tort* and wrongful death claims shall be tried in the district court . . . ." (emphasis added). Together, these subsections exclude the liquidation, estimation, or determination of unliquidated or contingent personal injury claims from the bankruptcy court's core statutory jurisdiction.

In their brief, the Movants rely on this exclusion and argue that personal injury claims are not core proceedings. While that characterization is generally accurate as far as it goes, the Movants take the argument further and assert that their Motion should be granted because a noncore personal injury matter may not be tried by a bankruptcy judge. This argument completely overlooks the status of their claim. This court need not determine the merits of the personal injury claim, or estimate or liquidate the damages resulting therefrom, because the Movants have themselves liquidated their damages claim as it was filed under penalty of perjury.

Case 22-40068-JJR13    Doc 88    Filed 02/14/24    Entered 02/14/24 12:05:25    Desc Main
Document    Page 4 of 14

Inasmuch as there is no outstanding objection to the Movants' claim, it is deemed allowed under Code § 502 and has received distributions pursuant to the confirmation order for well over a year. Nothing in the claim or its attachments preserved any issue of contingency or gave notice that the amount stated in the claim was anything other than the Movants' full damages asserted for the enumerated bases of the claim. There is no proceeding before this court or elsewhere, given the nullity of the State Court Lawsuit, to determine the personal injury matter on the merits. The Debtors no longer object to the claim or dispute the amount owing.

Instead, this is a routine scenario of payment on an allowed claim, which on its face asserted a sum-certain damages amount with no need to further liquidate or estimate the claim for it to be paid pursuant to a confirmed plan. The claim and its payment remain within the court's core jurisdiction over the allowance and disallowance of claims (28 U.S.C. § 157(b)(2)(B)), even though one of the bases for the damages included in the claim is a personal injury. As this case now stands, there is no dispute about the claim's allowance or amount. The claim is simply being paid as filed. Section 157's exception that would prohibit this court from determining, liquidating, or estimating an unliquidated or contingent personal injury tort claim is not implicated under these facts, because the court is not being asked to do any of those things. There is no cause to lift the stay and allow the Movants to pursue the State Court Lawsuit against the Debtors when the Movants are being paid their full amount of claimed damages under the confirmed chapter 13 plan.

Even if the merits of the personal injury claim were at issue, this bankruptcy court would nonetheless have the authority to determine the Movants' personal injury damages. The Movants submitted to this court's authority to adjudicate by filing a proof of claim.[6] Filing a proof of claim

---

[6] "A creditor who files a proof of claim in a bankruptcy case submits to the bankruptcy court's equitable jurisdiction for determination not only of the claim itself, but also of any

5

is akin to filing a civil suit.[7] The Supreme Court explained in *Stern v. Marshall*, 564 U.S. 462 (2011), that § 157(b)(5) and its directive that the district court, not the bankruptcy court, should determine personal injury claims on the merits is not jurisdictional. In *Stern*, the creditor filed a contingent proof of claim for damages from an alleged defamation committed by the debtor, as well as filing an adversary proceeding against the debtor to establish liability for that tort. The debtor objected to the contingent claim on grounds that liability was disputed and would be determined through the adversary proceeding. The defamation issue was thus before the bankruptcy court at the creditor's own choosing for over two years before the creditor complained that the bankruptcy court lacked jurisdiction over the defamation claim, which he described as a "personal injury tort." *Id.* at 479. The Court found the creditor had submitted the defamation issue to the bankruptcy court for determination and entry of final orders even if it was not a core matter. The Court agreed with the debtor that the creditor had waived any objection to the bankruptcy court's proceeding on the personal injury claim by filing a proof of claim and consenting to the bankruptcy court's authority to enter final orders, even if the tort were one that fell under § 157(b)(5)'s exception to core jurisdiction:

> Section 157(b)(5) does not have the hallmarks of a jurisdictional decree. To begin, the statutory text does not refer to either district court or bankruptcy court "jurisdiction," instead addressing only where personal injury tort claims "shall be tried."
>
> The statutory context also belies Pierce's jurisdictional claim. Section 157 allocates the authority to enter final judgment between the bankruptcy court and the district court. See §§ 157(b)(1), (c)(1). That allocation does not implicate questions of

---

counterclaim or defense that must necessarily be resolved in the claims allowance process." *Wilkins v. AmeriCorp Inc.* (*In re Allegro Law LLC*), 545 B.R. 675, 699 (Bankr. M.D. Ala. 2016).

[7] "In the bankruptcy context, a proof of claim filed by a creditor is conceptually analogous to a civil complaint, an objection to the claim is akin to an answer or defense and an adversary proceeding initiated against the creditor that filed the proof of claim is like a counterclaim." *In re Cruisephone, Inc.,* 278 B.R. 325 (Bankr. E.D.N.Y. 2002).

6

> subject matter jurisdiction. See § 157(c)(2) (parties may consent to entry of final judgment by bankruptcy judge in noncore case). . . .
>
> We agree with Vickie that Pierce not only could but did consent to the Bankruptcy Court's resolution of his defamation claim. Before the Bankruptcy Court, Vickie objected to Pierce's proof of claim for defamation, arguing that Pierce's claim was unenforceable and that Pierce should not receive any amount for it. Vickie also noted that the Bankruptcy Court could defer ruling on her objection, given the litigation posture of Pierce's claim before the Bankruptcy Court. . . . Pierce identifies no point in the record where he argued to the Bankruptcy Court that it lacked the authority to adjudicate his proof of claim because the claim sought recompense for a personal injury tort.

*Id.* 480-81 (record cites omitted).

In *Stern,* even though the creditor objected to the bankruptcy court's exercise of jurisdiction over the debtor's counterclaim, he never raised objection to the bankruptcy court's exercise of jurisdiction over his defamation claim until years into the case. *Id.* at 481. The Court found that even if he had a good argument against the bankruptcy court deciding his defamation personal injury claim on the merits, he consented to the bankruptcy court's deciding the issue of defamation by filing the proof of claim and the adversary proceeding, and participating in the case without objecting: "[T]he consequences of 'a litigant ... "sandbagging" the court—remaining silent about his objection and belatedly raising the error only if the case does not conclude in his favor—can be particularly severe. If [the creditor] believed that the Bankruptcy Court lacked the authority to decide his claim for defamation, then he should have said so—and said so promptly." *Id.* at 482 (internal citations omitted).

Similarly, in the current case, the Movants did even less to notify the court of their belief that the court lacked authority over their proof of claim than did the creditor in *Stern*, and in fact the Movants did nothing to indicate or preserve any need to estimate or further liquidate the sum-certain they showed as damages when they filed their claim. The Movant's proof of claim included the full extent of asserted money damages for the alleged assault, in addition to the trespass,

7

conversion, fraud, and possession claims recited therein. By filing that proof of claim, they consented to this court's authority to enter final judgment as to those issues, even if the claim's allowance and payment were not core (as a result of an undisclosed contingency or need to liquidate the unobjected-to, allowed claim). Furthermore, they have accepted payments for over a year while doing nothing to seek a different determination on the merits (the State Court Lawsuit being a nullity). At this point, it would indeed be "sandbagging" to allow the Movants to change course. There is no cause to lift the stay to allow suit in State Court because the Movants have consented to this court's determination of each of the grounds set out in their proof of claim, including the personal injury (which the court need not determine in any event, the claim being allowed as filed).

### Waiver

The Movants have also waived the right to additional damages by accepting payments toward their allowed claim under the confirmed plan for well over a year. The confirmation order binds all parties to the provisions of the confirmed plan. Code § 1327(a). This court considered the effect of accepting payments on an allowed claim without reservation pursuant to a confirmed plan in *In re Cottingham*, 618 B.R. 555 (Bankr. N.D. Ala. 2020). In that case, a pawnbroker accepted three payments on its allowed claim which the debtor's confirmed plan treated as secured by a motor vehicle. When the pawnbroker later moved for stay relief asserting that it held no secured claim but was instead the owner of the vehicle under the state pawnbroker statute, this court analyzed the effect of having accepted the payments and found that the pawnbroker had waived its right to assert ownership, or to any treatment other than as provided under the confirmation order. Citing Code § 1327(a), this court stated that the pawnbroker's objection to its claim being allowed and treated per the plan came too late: "That argument should have been made before

confirmation at best, and at the absolute latest, before accepting payments from the Trustee pursuant to the confirmed plan." 618 B.R. at 565 (also citing *TitleMax v. Northington (In re Northington)*, 876 F.3d 1302 (11th Cir. 2017)); *see also Hope v. Acorn Fin., Inc.,* 731 F.3d 1189, 1193-94 (11th Cir. 2013) (discussing *In re Bateman*, 331 F.3d 821 (11th Cir. 2003) and the binding effect of confirmation on parties in interest, even when the plan would not have been confirmable if a timely objection had been raised).

As mentioned, the pawnbroker in *Cottingham* accepted three payments from the trustee on its allowed claim, and the court found that accepting the payments constituted a waiver of the right to be treated as the owner of the vehicle rather than a secured creditor, under the guidance of *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th Cir. 1982):

> [W]aiver is the intentional relinquishment of a known right. Waiver requires (1) the existence at the time of the waiver of a right, privilege, advantage, or benefit which may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage, or benefit. Waiver may be express, or, as in this case, *implied from conduct*. A party may waive any right which it is legally entitled to, including rights secured by contract. When waiver is implied from conduct, the acts, conduct, or circumstances relied upon to show waiver must make out a clear case. Furthermore, waiver does not arise from forbearance for a reasonable time.

Like the pawnbroker in *Cottingham*, the Movants have not only slept on their rights relative to confirmation but have accepted payments from the trustee for over a year under the confirmed plan. The Movants have thereby waived their right to pursue a different amount of damages in State Court for any of the grounds asserted in the proof of claim.

**Preclusion**

The Movants are also precluded from amending the claim to the detriment of the Debtors, the estate, and the other creditors. The Eleventh Circuit has explained, in the chapter 11 context, that postconfirmation claim amendments are disfavored and should be allowed only in extremely

9

compelling circumstances. In *In re Winn Dixie Stores, Inc.*, 639 F.3d 1053 (11th Cir. 2011), the confirmed chapter 11 plan provided it would fully resolve all pre-effective date claims against the debtor. *Id.* at 1056. Despite this effect, the creditor sought to amend its claim post-confirmation to claim additional damages that would have been covered by the plan if timely claimed, and the debtor objected. *Id.* at 1055. The creditor framed the issue as whether an amended claim should be allowed, while the debtor framed the issue as whether the confirmed plan had res judicata effect. *Id*. at 1055-56. The circuit court agreed that res judicata was the appropriate framing of the issue when considering a post-confirmation proof of claim amendment:

> The question in this case is not when a claim may be amended in the general case—for which *International Horizons* provides a test—but rather whether a confirmed reorganization plan precludes subsequent efforts to amend prior claims—an issue not addressed by *International Horizons* because it did not involve an attempt to amend a claim *post-confirmation.*
>
> Whether Winn–Dixie's confirmed reorganization plan is entitled to the preclusive effect of *res judicata* is the threshold issue in this case. If Winn–Dixie's reorganization plan is not entitled to *res judicata* effect, then *International Horizons* might provide the applicable test for whether appellants' proposed amendments are permissible in this case. But the first question we must resolve is whether Winn–Dixie's reorganization plan is entitled to *res judicata* and precludes subsequent amendment of claims.

*Id.* at 1056 (referencing *In re International Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985)). The court reasoned that the creditor's right to payment as it existed outside bankruptcy was replaced, in essence, by its treatment under the confirmed chapter 11 plan. *Id.*

Similarly, the Eleventh Circuit in *Bateman* explained the res judicata effect of confirmation in chapter 13 cases under Code § 1327 is more stringent in its exclusion of further claims than is common law issue preclusion. 331 F.3d at 830. "[The creditor]'s proof of claim and the Plan's listed distribution amount, however improper, was within the definition of claim preclusion because it very well might have been and, as we have articulated should have been, presented

before the bankruptcy judge prior to the Plan confirmation." *Id.* While *Bateman* admittedly involved special mortgage lien issues that are not before the court in the instant matter, this court is persuaded that *Bateman'*s rationale requires the same result in this matter where the unsecured claim was filed preconfirmation, asserting a sum certain as damages for a litany of claim bases shown thereon, and the plan was thereafter confirmed providing that the claim, along with other unsecured claims, would be paid in full. As was true of the creditor in *Bateman*, the Movants here chose to file a proof of claim and participate in the plan distribution. The Movants thus "assumed some level of responsibility" when they acquiesced to their treatment under the plan and accepted plan payments. *Id.* at 833. Notably, this is the same reasoning by which the Debtors' claim objection would likely have been overruled, had it not been withdrawn. All parties are bound by the plan under these circumstances. *Cf. In re Templeton*, 538 B.R. 578 (Bankr. N.D. Ala. 2015) (res judicata effect of confirmed plan precluded postconfirmation objections to unsecured proofs of claim that were filed before confirmation and that had already received distributions from the trustee, citing *Hope v. Acorn,* 731 F.3d 1189 2013); *In re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1550 (11th Cir. 1990); and *Bateman*).

The Movants' claim is also not subject to amendment even if the damages asserted on the claim were less than the full damages the Movants would seek in State Court were the Motion granted:

> Although amendment [to a proof of claim] should be freely granted prior to confirmation—under the guidance of *International Horizons*—amendment of a creditor's claim after confirmation of a plan can render a plan infeasible or alter the distribution to other creditors. Therefore, we hold that post-confirmation amendment—while not prohibited—is not favored, and only the most compelling circumstances justify it. In the absence of such compelling reasons, a confirmed reorganization plan should be accorded *res judicata* effect on a creditor's subsequent attempt to amend his claim.

*Winn-Dixie Stores*, 639 F.3d at 1056-57. There is no dispute that allowing a different (higher)

11

determination of the damages owing for claims asserted as bases on the proof of claim would not only be fatal to the chapter 13 case, the mere fact of having to defend such a request could cause the plan to fail, to the detriment of the Debtors, the estate, and their other creditors, all of whom are being paid in full as the plan was confirmed.

### Possession

There is also no dispute that the Debtors have been in possession of the Property and have occupied it as their principal residence since before filing the chapter 13 case. No valid dispossessory action was pending when the case was filed, and the State Court Lawsuit is a post-petition nullity as to the Debtors. While accepting payments on their claim, the Movants waited over a year to file the Motion and in the meantime made no challenge as to the scheduled ownership, exemption, and ongoing occupation of the Property by the Debtors, which possession is indisputably vital to the plan's success. Therefore, for the same reasons it will not allow the Movants to pursue further or different damages for the enumerated bases as listed in their claim, this court will also not lift the stay to allow dispossessory proceedings in State Court.

### Summary

The Movants have shown no compelling circumstances to justify lifting the stay so they can drag the Debtors into State Court this far into the plan, following their acceptance of payment thereunder and maintenance of the status quo insofar as ongoing possession of the Property is concerned for well over a year.[8] The Movants have collected more than $7,000 on their claim and

---

[8] Only creditors with allowed claims may participate and be paid in a debtor's chapter 13 case. If a creditor fails to timely file his proof of claim, his claim will in most instances be disallowed and not paid, but ultimately discharged. (There are exceptions, but none apply here.) A claim deemed *disallowed* because a creditor did not timely file a proof of claim may still be a debt *provided for* under a chapter 13 plan, and claims provided for are discharged when the plan is completed even though they were not paid under the plan because they were not allowed. Code § 1328(a). A creditor's timely-filed proof of claim is critical to the successful workings of chapter

12

Case 22-40068-JJR13   Doc 88   Filed 02/14/24   Entered 02/14/24 12:05:25   Desc Main
Document      Page 12 of 14

will continue to be paid so long as payments are made by the Debtors pursuant to their confirmed plan. Lifting the stay would be a futile act because the merits of the claim do not need to be determined for the full measure of damages as calculated by the Movants to be paid in full under the chapter 13 plan, and the claim is not subject to amendment to assert additional damages at this point in the case. The Movants' claim is provided for in the plan, and should the Debtors complete their plan payments, the debts underlying the Movants' claim, including the full amount of damages claimed for the alleged personal injury, will be discharged under Code § 1328(a). The court therefore finds no cause to lift the stay to allow a merits determination of the personal injury allegation in State Court and the Motion is due to be denied as to that request.

To the extent the Movants seek to establish they are the sole owners of the Property, entitled to dispossess the Debtors, rather than creditors with a claim for possession, the Motion must also fail. Pursuant to 28 U.S.C. § 157(a) the District Court for the Northern District of Alabama has referred all cases under the Code to the bankruptcy courts in the district, and by virtue of that referral, 28 U.S.C. § 1334 (e)(1) gives this bankruptcy court exclusive jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and property of the estate." And Rules 7001(2), (3), and (9) of the Federal Rules of Bankruptcy Procedure provide that bankruptcy adversary proceedings include "(2) a proceeding to determine the validity, priority, or extent of a lien or *other interest* of the estate; (3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and a co-owner of the property; [and] (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing . . . ." (emphasis added). Thus,

---

13. If creditors are not bound in most instances by the amounts they assert are due in their timely-filed claims, the possibility of discharge and its resulting financial fresh start can be illusory, exactly as the court in *Winn-Dixie Stores* cautioned in the chapter 11 context.

the determination of the Debtors' (now the estate's) interest and rights in the Property, and a sale for division if the estate owns an undivided interest, are core proceedings under § 157(b)(1) because they arise under Code §§ 541 and 363(h) and fall within this court's exclusive jurisdiction over estate property determinations. Therefore, to the extent the Motion asks to have the State Court make the determination of whether the estate owns an interest in the Property, and if so to sell the Property for division, the court finds the Motion is due to be denied because that determination and liquidation, if it should be made, can be made by this court.

The court is not deciding whether the Debtors hold an interest in the Property, or if they do, to what extent. The court need not determine the parties' respective interests in the Property to rule on the Motion. That determination will be made when and if an adversary proceeding raising the issue of ownership among the parties is commenced under Rule 7001.

### Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that the Movants' Motion (Doc. 64) is DENIED, and the Debtors' (Doc. 77) and Trustee's objections thereto are SUSTAINED.

So ORDERED this 14th day of February 2024.

/s/ James J. Robinson_____
JAMES J. ROBINSON
UNITED STATES BANKRUPTCY JUDGE